UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| M.K.C. | CIVIL ACTION |
| VERSUS | NO. 25-2369 |
| SOCIAL SECURITY ADMINISTRATION | SECTION: "P" (3) |

**REPORT AND RECOMMENDATION**

Claimant timely filed this action for judicial review[1] after the Social Security Administration (the "Administration") issued a final denial of her claim for disability insurance benefits under Title II of the Social Security Act (the "SSA"), 42 U.S.C. §§ 416(i) and 423, *et seq.*[2] Claimant asks the Court to reverse the Administrative Law Judge's ("ALJ") holding that Claimant is not entitled to the benefits she seeks and remand this matter for further administrative proceedings.[3] The Administration urges the Court to affirm the denial of benefits and dismiss this case.[4] Pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2(B), this matter was referred to the undersigned United States Magistrate Judge. Having carefully considered the parties' briefing and the administrative record[5] in the light of the applicable law, it is recommended that the ALJ's decision be reversed and remanded for further proceedings.

[1] *See* 42 U.S.C. § 405(g).
[2] R. Doc. 8.
[3] *Id*. at 10.
[4] R. Doc. 11.
[5] R. Doc. 7.

## I. Background

Claimant is a 58 year old female.[6] She has a college degree and work experience as a sales director and bartender.[7] Claimant applied for disability insurance benefits on March 21, 2023.[8] In her application documents, Claimant represented that she suffered from fine motor impairment of her right hand and leg, aphasia, and impaired cognitive ability. [9] Claimant maintains that a stroke on February 16, 2023, rendered her disabled by these conditions.[10] After the Administration denied her application and request for reconsideration,[11] a hearing to review the claim was held at Claimant's request.[12] The ALJ issued a decision on September 8, 2025, holding that Claimant was not disabled within the definition of the SSA[13] between February 16, 2023, through the date of the decision.[14]

The ALJ conducted the five-step sequential analysis required by 20 C.F.R. § 404.1520 to consider a claimant's assertion of disability. As the Fifth Circuit has explained:

---

[6] *Id*. at 56.
[7] *Id*. at 63, 75, 245–46.
[8] *Id*. at 191.
[9] *Id*. at 189, 217.
[10] *Id*. at 39.
[11] *Id*. at 5, 14.
[12] *Id*. at 34–54, 125.
[13] *See* 42 U.S.C. §§ 416(i), 423(d).
[14] R. Doc. 7 at 28.

> The five steps consider: (1) Is the claimant "doing substantial gainful activity"? (2) If not, does the claimant "have a severe medically determinable physical or mental impairment" of sufficient duration? (3) If so, does her impairment(s) meet or equal a listing in Appendix 1 of the applicable regulations? (4) If not, considering the claimant's "residual functional capacity," can the claimant still do her "past relevant work"? (5) If not, can the claimant adjust to other work given her residual functional capacity, age, education, and work experience?

*Vasquez v. O'Malley*, 2024 WL 4381269, at *1 (5th Cir. Oct. 3, 2024) (quoting 20 C.F.R. § 416.920). At steps one through four, the burden of proof is on the claimant to show she is disabled. *Shave v. Apfel*, 238 F.3d 592, 594 (5th Cir. 2001). If the claimant can carry this burden through step three or four, she has established disability and the inquiry is over. *Id.* Otherwise, the burden shifts to the Commissioner at step five to prove the claimant nonetheless retains sufficient functional capacity to adjust to other employment. *Id.*

The ALJ found that Claimant satisfied steps one and two. First, Claimant had not engaged in substantial gainful activity since the alleged onset date of her disability.[15] Second, the ALJ found that Claimant suffered from severe impairments, including "vascular insult to the brain, hypertensive cardiovascular disease, essential hypertension, osteoarthritis, obstructive sleep apnea, depressive disorder, anxiety disorder, and post-traumatic stress disorder (PTSD) (20 CFR 404.1520(c))."[16] The ALJ determined, however, that Claimant did not satisfy step three because none of these impairments or any combination thereof met or equaled an impairment listed

[15] *Id.* at 19.
[16] *Id.* at 20.

in Appendix One.[17] At step four, the ALJ found that Claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(C), except for a few additional capacities and limitations.[18] The ALJ concluded that she was not capable of performing any past relevant work.[19] At step five, the ALJ concluded that Claimant could adjust to other work.[20] Therefore, the ALJ found that Claimant was not disabled from February 16, 2023, through September 8, 2025, the date of the decision.[21]

Claimant asserts that at step five,[22] the ALJ erred by citing to work above the unskilled level in violation of Social Security Ruling 82-41.[23] Claimant also asserts that the ALJ failed to meet the burden at step five of producing evidence of other jobs that Claimant could perform.[24]

## II. Standard of Review

This Court's review of a denial of social security benefits "is exceedingly deferential and limited to two inquiries: whether substantial evidence supports the

---

[17] *Id.*
[18] "[S]he can occasionally climb ladders. She cannot operate foot controls with the right lower extremity. She can frequently handle and finger with the right hand. She must avoid heights and cannot perform driving as a function of her job. She can understand, remember, and carry out detailed instructions. She can perform work without specific production pace rate, like assembly line, or hourly production quotas." *Id.* at 21.
[19] *Id.* at 26.
[20] *Id.* at 27.
[21] *Id.* at 28.
[22] Claimant initially asserted a third error by the ALJ but withdrew that argument in her reply. R. Docs. 8 at 2, 12 at 2. The Court commends counsel's professionalism in doing so.
[23] R. Doc. 8 at 4.
[24] *Id.* at 6.

ALJ's decision, and whether the ALJ applied the proper legal standards when evaluating the evidence." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). This must constitute "more than a mere scintilla" of evidence but may be "less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). The Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [its] judgment . . . even if [the Court concludes that] the evidence preponderates against" the ALJ's findings. *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988). "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings to support" the denial of benefits. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000) (citing *Johnson*, 864 F.2d at 343–44). If supported by substantial evidence, the ALJ's determination is conclusive and must be affirmed. *Richardson*, 402 U.S. at 390 (citing 42 U.S.C. § 405(g)).

## III. Analysis

Claimant contends that the ALJ failed at step five to perform a transferable skills analysis as required by Social Security Ruling 82-41 and therefore should not have concluded that Claimant could perform semiskilled jobs.[25] *See Titles II and XVI: Work Skills and their Transferability as Intended by the Expanded Vocational Factors Regulations*, SSR 82-41 (S.S.A. 1982) ("When the issue of skills and their

[25] *Id.* at 4.

transferability must be decided, the adjudicator or ALJ is required to make certain findings of fact and include them in the written decision. Findings should be supported with appropriate documentation.").

Claimant relies primarily on *Prudhomme v. Colvin*, 605 F. App'x 250, 252 (5th Cir. 2015).[26] In that case, the Fifth Circuit found that substantial evidence did not support the ALJ's conclusion that an unskilled claimant, Teisha Prudhomme, could perform semiskilled jobs. At the hearing, the ALJ asked the VE to identify occupations a person similarly situated to the claimant could perform. *Prudhomme v. Colvin*, 605 F. App'x 250, 252 (5th Cir. 2015). The VE testified that Prudhomme would be able to perform three "cashier positions that would be from the unskilled up to the semi-skilled occupational level at the sedentary level." *Id.* at 254. Yet the VE never explained how or why Prudhomme would be able to perform the suggested semi-skilled jobs. *Id.* "Without such information in the record, there is not substantial evidence upon which to base the denial of benefits." *Id.* at 252 (citation omitted).

In this case, the ALJ similarly concluded that Claimant was not disabled because she was capable of making a successful adjustment to other work that exists in significant numbers in the national economy.[27] The Administration emphasizes that the ALJ stated that the transferability of job skills was "not material to the determination of disability."[28] In *Prudhomme*, the Fifth Circuit determined that

---

[26] Although Claimant featured *Prudhomme* in her opening brief, the Administration does not discuss—much less distinguish—that case.

[27] R. Doc. 7 at 28.

[28] R. Doc. 11 at 9.

"'[t]he [ALJ]'s finding of non-materiality [] means that [the Claimant] effectively was unskilled.'" 605 F. App'x at 253 (quoting *Albritton v. Sullivan*, 889 F.2d 640, 642 & n.1 (5th Cir.1989)).[29] So too here, the ALJ's finding indicates that Claimant is unskilled. This creates a logical and evidentiary gap relative to the ALJ's conclusion at step five. *See also Welch v. Colvin*, No. 1:15CV352, 2016 WL 4507357, at *6 (M.D.N.C. Aug. 26, 2016) ("The ALJ did not make any of the necessary findings because he assumed that transferability was not at issue, but logic dictates that a claimant who cannot perform past relevant work must have transferable skills that equip her to perform the new semi-skilled occupations that fall within her residual functional capacity.").

The ALJ adopted the Vocational Expert (VE)'s testimony that a hypothetical individual similarly situated to Claimant could perform work as an order filler and industrial order clerk.[30] The VE testified:

> [R]epresentative DOT title is order filler. The matching DOT code is 222.487-014. The DOT classification is obsolete from 1977. I'm replacing it with updated classification from Occupational Requirement Survey updated in 2024. The calculated estimate under ORS would be 337,820 positions. Another example would be work as an industrial order clerk. Industrial order clerk comes from the occupational group shipping and receiving and inventory clerks. The group code 435071. That representative title industrial order clerk matches the DOT code 221.467-022. Again, the DOT classification is obsolete from 1977. The ORS calculated estimate is 126,797.[31]

---

[29] The ALJ also sought to evaluate how Claimant's limitations eroded the "unskilled occupational base." *Id.* at 27.
[30] R. Doc. 7 at 28.
[31] *Id.* at 46.

The cited positions, however, are designated as semiskilled by the DOT, with specific vocation preparation (SVP) levels of 3 and 4.[32] The VE testified that Claimant did not have any transferable skills from her past relevant work,[33] but did not explain why Claimant could perform the cited positions. Thus, the ALJ's decision is not supported by substantial evidence. *See Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000) ("[T]he ALJ may rely upon the [VE's] testimony provided that the record reflects an adequate basis for doing so.").

According to the Administration, the VE did not rely on the DOT classification of the jobs and instead relied on Occupational Requirements Survey (ORS) data. The "VE may cite to multiple acceptable sources of occupational data that do not precisely correspond to each other," including the ORS. *See Titles II and XVI: Use of Occupational Information and Vocational Specialist and Vocational Expert Evidence in Disability Determination*, SSR 24-3p (S.S.A. 2025). Yet, the policy is clear that the "categorization of skills [] corresponds with the DOT." *Id.* In addition, "VEs should identify and explain if they cite an occupation that is performed in a different way than identified in the source of data they used." *Id.* "If the VE uses a data source that defines exertion, education, or skill levels differently than our regulations, we expect the VS or VE to explain the difference." *Id.* To the extent that the VE contemplated that the cited semiskilled occupations could be performed by an unskilled worker without transferable skills, he did not provide any such explanation at the hearing.

[32] R. Doc. 8 at 5.
[33] R. Doc. 7 at 47.

The Administration also argues that the VE contemplated unskilled occupations because the number of occupations identified using ORS data includes occupations for lower SVP levels.[34] That argument, however, was rejected by the Fifth Circuit in *Prudhomme*:

> [D]uring the hearing, the VE testified that Prudhomme would be able to perform "a variety of cashier positions that would be from the unskilled up to the semi-skilled occupational level at the sedentary level." Nonetheless, he listed only a specific DOT cashier job that is semi-skilled—DOT No. 211.482–010—and did not state the number of unskilled, sedentary cashier jobs that are available in the state or national economy. Moreover, it does not appear that the ALJ explicitly relied on the availability of an unskilled cashier job to support his finding. Indeed, neither the VE nor the ALJ listed a named and numbered, unskilled cashier position that existed in substantial numbers in the national economy.

605 F. App'x at 254 (citations omitted). Here, the VE reported the number of two semiskilled jobs based on ORS data. The number of unskilled jobs is unclear. *See Stark v. Comm'r of Soc. Sec.*, No. 3:14CV150-DAS, 2015 WL 2251821, at *4–5 (N.D. Miss. May 13, 2015) ("The court agrees with the plaintiff and finds the VE's testimony unclear as to whether all 600 jobs under the three representative occupations, or only a portion thereof, can be performed at the sedentary exertion level."). Thus, "the court is unable to conclude in this instance that there is no realistic possibility that the ALJ would have reached a different result" and "the error is not harmless."[35] *See Prudhomme*, 605 F. App'x at 254–55 (citations omitted); *Mays v. Bowen,* 837 F.2d

[34] For instance, a calculation of the number of jobs at the SVP-2 level is inclusive of the number of SVP-1 jobs. R. Doc. 7 at 51.
[35] Because the ALJ's decision is not supported by substantial evidence in the record and the error is not harmless, Claimant's remaining grounds for reversal need not be addressed.

1362, 1364 (5th Cir. 1988) (holding that procedural perfection is not required unless the substantive rights of the party have been affected).

## IV. Recommendation

For the foregoing reasons,

**IT IS RECOMMENDED** that the ALJ's decision be **REVERSED** and **REMANDED** for further administrative proceedings.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this 4th day of August, 2026.

EVA J. DOSSIER
UNITED STATES MAGISTRATE JUDGE